Judge Underwood
delivered the Opinion of the Court.
Gill, as relator, instituted this action against Staton and his sureties in his official bond, as sheriff, alleging as a breach thereof, that the deputy of Staton had, contrary to law, levied a junior execution on property which should have been taken and sold under older executions, in which Gill was bound as surety, and which first came to the deputy’s hands, in consequence of which, the elder executions were afterwards levied on the estate of Gill, and the debts made out of him.
We shall notice such questions only, as we deem necessary to a correct decision of the cause, upon its return to the circuit court; for a new trial must be awarded.
One of the points litigated in the circuit court, relates to a tract of land on which Gill contends the deputy of Staton should have levied the executions in which he was bound. It seems, that the principal debtor had conveyed this land, by an absolute deed, to a man named Frazier. Staton and his sureties insisted, that they were not responsible for the failure of the deputy to levy the elder executions on this land, because the principal debtor had no title to it. The court, however, were of opinion, that the deputy acted illegally, if the money arising from the sale of the land was not applied to the payment of the elder executions first put into his hands; and instructed the jury to that effect. We are of opinion that the circuit court erred. If it be conceded, that the defendant in the executions, had no title to the land, then, the relator cannot com *398 plain. It can be no injury tohim, that the property of' a stranger was not applied to the payment of a debt for *ie was bound. He might gain an advantage if the money arising from the sale of a stranger’s property’ was aPP^e<l so as to discharge him, but he has no right to claim that it shall be doné. If the sheriff has levied on, and sold, a stranger’s property in satisfaction of a junior execution subsequently coming to hand, the plaintiff in such junior execution may profit by the wrong done the stranger; but we know no principle which will allow the plaintiff in the elder execution first placed in the officer’s hands, to say to him, “you have injured me, because you have committed a trespass on the property of a stranger, for the benefit of the younger execution plaintiff: you ought to have done it for my benefit.” The sureties in the elder execution, have no greater cause to complain, in such a case, than, the plaintiff has.
Evidence to con tradict or explain a deed— as,to show that, tho’absolute on its face, it was only intended as a mortgage, is “not admissible, in a trial at law. That a deed was made for a frau dulent purpose —as to screen the land from creditors, may be shewn, by parol proof; and the fraud being established, a a sale of the land under execution against the grantor, will pass the title.
If the land conveyed to Frazier was not subject to-the elder executions, it was erroneous to allow the relator to recover any thing on that account. The plain-, tiff in the junior executions may indemnify the officer for levying and selling property not liable. The parties to the elder execution have no right to enquire how-it was disposed of, until they have shown that it was liable to their execution.
If the deed to Frazier was executed in good faith, it seems to us that the land was not liable. The court permitted Frazier, who was introduced as a witness, to state that, although the deed was absolute on its face, yet it was intended by the parties to be a mortgage only. We are of opinion, that it was erroneous to let in such parol testimony, to contradict or explain the obvious import of tiie deed. Written instruments are valueless, il they can be thus modified by parol testimony. It might have been competent to impeach the validity of the deed to Frazier, upon the score of fraud, and to have shewn, by parol testimony, that it was a *399 isnere contrivance to screen the land from the claims of creditors- Nothing, of the kind was attempted. Had it been successfully done, then it would have been made to appear that the land was subject to the prior executions.
An officer who, with a senior and junior execution, in his hands, levies the latter first; in consequence of which, the former is satisfied by a sale of the property of a surety, is liable to the surety, for damages, to the full, value of the su- ’ rety’s property-sold : unless the defendant’s effects were insufficient to satisfy the senior execution: then the officer is only liable for so muoh of the surety’s property as sold for the sum the effects of the principal brought - not for what was required to make up the deficiency — the loss, by sacrifice, if any, being thus cast upon the officer.
[.fudge Underwood thinks the measure ofi of damages against the officer, is the proceedsofhsmuoh of the surety’s property as was wrongfullysold, without regard to actual value and sacrifice.]
If it shall appear, on another trial, that the land was subject to the senior executions, it will be a question of consequence, to settle the criterion of the damages, which the relator should recover. Upon this point, there is some difference of opinion among the members o'f the court. The Chief Justice and Judge Nicholas think, that where the sheriff Satisfies the- junior ’execution with the money arising from the sale of the principal’s property, which was liable to the senior execution first put into the sheriff’s hands; in consequence of which, the property of the surety is afterwards taken to satisfy the senior execution, — the sheriff is liable to the surety for the full value of his property so taken and sold to satisfy the senior execution, provided the money arising from the sale of the principal’s property, and which was illegally applied'in discharge or satisfaction of the junior execution, was sufficient to pay off the senior execution ; but if not sufficient, then, as part of the surety’s property could be rightfully sold to pay so much of the senior execution as would not have been paid by the sale of the principal’s property, the surety is only entitled to recover the true value of so much of his property, as was sold to make the amount which the sheriff illegally applied in satisfaction of the junior'execution..
Judge Underwood-thinks that the criterion in such case, is this: whatever sum of money is- made by the sale of the principal’s property, and is illegally applied by the sheriff, in satisfaction of the junior execution, is the amount, with accruing interest, which the sheriff should pay to the surety. Judge Underwood thinks that the surety ought not. to be allowed to go into the question of sacrificing his property under the hammer, any more than- he could were he seeking redress against his principal for having paid the debt. The other Judges how *400 ever, find sufficient reason in the illegal conduct of the sheriff, to justify a different rule. v
The fact that money had been made out of the defendant in an execution, after the sheriff had sold his property, and applied the', proceeds to the' satisfaction of a junior, ■when he ought to have applied them to the elder ex’on, does not affect the right of the surety in the senior execution, who consequent ly had the debt to pay — against the sheriff, for .damages for his illegal proceeding ; and evidence of that fact, on the trial of the action of the surety against the sheriff, is irrelevant.
Judge Underwood (differing from the majority of the court) is of opinion that the sheriff is only liable to the surety, for so much as the fatter had to pay, and could not recover of his principal ; fy, consequently,that evidence to show the abilitv of the principal to pay something, is admissible, to reduce the recovery, pro tanto, and even to nominal damages.
*400 Proof was offered conducing to shew that the relator’s principal wds not insolvent, and that money had been made out, of him,'after the sale of the property by the sheriff, and the illegal application of the proceeds to the discharge of the junior execution, and before the institution of this suit. This evidene'e was rejected by the court. This derision gives rise to another question of consequence, and upon which we are not unanimous. The Chief Justice and Judge Nicholas are of opinion, that the evidence was altogether irrelevant, and ought to have been excluded. They think that when a sheriff sells property, which he says he levied in virtue of a junior execution, which he advertised and sold in satisfaction of the junior execution, and for which he takes a sale bond payable to the junior execution plaintiff, having in his hands, at the time he was doing all this, a prior execution, which came to his hands first; that the amount made in virtue of the sale by the junior execution should be regarded in the same light as if it had been so much money actually paid by the defendants in discharge of the first execution ; and therefore, the sheriff has no authority to levy the first execution thereafter upon the property of the surety; and if he does, he is answerable to the surety for the value of the property, without regard to the solvency or insolvency of the principal.
Judge Underwood is of opinion, that the levy of a junior execution on the property of the principal debt- or, at a time when the officer holds an elder execution which came to hand, before the junior execution did, selling the property thus levied, and taking a sale bond to the junior execution plaintiff, is not equivalent to the payment of 'the money upon the senior execution. He admits that if the senior execution was paid off, the sheriff would thereafter be a trespasser if he seized property under it, whether the property so seized belonged to principal or surety. But he denies that a misapplication of money or property, giving the execution which last came to hand, a preference over an elder execution *401 first in hand, is a payment of the first execution, or can with propriety be considered equivalent to it. Such misapplication would not furnish grounds for the principal or surety in the first execution to enjoin further proceedings upon it. Certainly, there would be no ground for injunction in behalf of the principal, nor is it perceived how the surety could suspend the plaintiff in the collection of his debt. Nor is it seen hóVv such misapplication could deprive the sheriff of his justification, under the elder execution, were he sued as a trespasser, for a subsequent levy of it. Judge UnderwOod is therefore of opinion, that the sheriff is only bound to answer for the injury which the surety will sustain in consequence of the illegal act of the sheriff, in violating the rule prescribed by law ; which injury is just the amóunt of loss thrown on him by his principal’s insolvency. . Jf the surety can obtain the sum he is compelled to pay, with interest, from his principal, he will bo compensated. But so far as he cannot obtain indemnity from the principal, to that extent the sheriff ought to he answerable, and no farther, except for nominal daihages. iJence Judge Underwood thinks the testimony was improperly excluded.
It was erroneous to permit testimony to go to the jury, detailing what the deputy, Barton, said concerning the advice which he received from C. Tompkins.
It is believed, that the circuit court will be enabled, from the foregoing view, to see how far the multifarious instructions asked on both sides, and the various decisions given in the progress of the cause, comport with the opinion of this court ; and hence it is not essential to consume time by a particular notice of each instruction and decision in the circuit court.
Judgment reversed, with costs, and cause remanded, for a new trial not inconsistent herewith.