CHANCERY.

*Case* 52.

July 10.

Case stated.

First count.

# Rowe *vs* Williams.

APPEAL FROM THE RUSSELL CIRCUIT.

*Sheriffs' bonds. Actions. Executions.*

JUDGE MARSHALL delivered the opinion of the Court, which was suspended, by petition for a re-hearing, until the 25th of October, when the petition was overruled.—REPORTER.

THIS was an action on the case by Rowe against Williams, as Sheriff of Russell county. The defendant filed a demurrer to the declaration, which was overruled; and a verdict having been found for the plaintiff, the judgment was arrested for some defect in the declaration, which having been amended, was adjudged insufficient on demurrer. No further amendment being offered, judgment was rendered against the plaintiff, who brought the case to this Court for revision, presenting no other question but as to the sufficiency of the declaration.

The action is brought by a security in an injunction bond. The first count alledges that after the injunction was dissolved with damages, the plaintiff in the judgment which had been enjoined, caused executions to issue on the judgment for the debt, interest and costs, and on the decree of dissolution for the damages and costs therein, which were directed to the Sheriff of Russell county, and while in full force, came to the hands of the defendant, then being Sheriff of said county; that while so in his hands, the defendant therein, Smith Turner, for whom plaintiff was surety in the injunction bond, owned and had in his possession ten slaves, of value more than sufficient to pay said executions, on which the said Sheriff might and ought to have levied, for the satisfaction of the same, but that in violation of his duty, he negligently and unlawfully failed and refused to make any levy on them or any of them, and suffered and permitted said slaves, while the executions were in his hands in full force and unsatisfied, to run and be run and carried off from the county of Russell and the Commonwealth of Kentucky, leaving said executions wholly unsatisfied. By reason

of which negligence and the insolvency of Smith Turner, the plaintiff has been compelled, as the surety of Smith Turner in the injunction bond, by the judgment of the Russell Circuit Court, in a suit brought on the bond, to pay the amount of said·executions and costs, and has so paid a large sum, viz: $1,200.

Rowe
*vs*
WILLIAMS.

The second count alledges.that the ten slaves, the property of Smith Turner, and more than sufficient in value, &c., were given up by him to the defendant, in the county of Russell, to be sold in satisfaction of the said executions while they were in his hands in full force, but that he negligently and unlawfully, and in violation of his duty, permitted them to remain in the possession of Smith Turner after levied on, without taking a forthcoming bond for their delivery on the day of sale, as required by law, and went on to advertise a sale, but before the day fixed, the slaves were removed and carried off out of Russell county and out of the Commonwealth; nor did Smith Turner pay any thing, nor the defendant make any thing on said executions ; but the defendant, as Sheriff, illegally and unjustly returned them to the office whence they had issued, and falsely and illegally endorsed thereon, a return in which he falsely and wilfully omitted to say any thing about the levy of said executions or either of them, on the slaves or any of them, &c. &c., but falsely and illegally returned, among other things, that he could find no property, &c. &c., after crediting an inconsiderable sum, out of which to make the balance of said executions; that Smith Turner became insolvent and left Kentucky with his property and nothing could be made, &c., after the defendant's illegal conduct, &c. In consequence of which the executions were not paid, and the plaintiff was sued on the injunction bond and compelled to pay, and did pay, &c. &c.

Second count.

It seems entirely obvious that upon the facts stated in each count, and especially in the last, the Sheriff has been guilty of a breach of duty by which the plaintiff has been greatly injured ; and we do not perceive on what principle the right of action can be denied, unless it be on the ground that the duty which the Sheriff has violated, was not owing to the plaintiff, or that the plaintiff's

Rowe
vs
Williams.

This case distinguished from the case of *Hawkins* vs *The Com'wth.* (3 *A. K. Marshal* 339.),

interest in its performance was too remote to authorize an action for its breach.

The case of *Hawkins* vs *The Commonwealth*, (3 *A. K. Marshall*, 339,) has been referred to as deciding that the party suing the Sheriff must have a legal interest in the subject affected by his violation of duty. But that case only decides between the legal and equitable holder of the same demand, that the action for an injury to it by the Sheriff, (as by his failure to levy an execution issuing on a judgment which has been assigned,) must be brought by the party having the legal title, that is, by the plaintiff therein, and not by the assignee, whose title is equitable only. There the plaintiff in the judgment and his assignee, were in effect trustee and *cestui que trust*. Their interests were identical; or rather there was but one interest, and that interest could only be asserted in a Court of law by the trustee, whose name the assignee had a right to use. In this case there is no such identity of interest and no such relation between the plaintiff in the executions and the plaintiff in this action, then surety in the injunction bond. It is true that any effectual proceedings upon the executions would have enured to the benefit of the injunction surety. But the plaintiff in the former was not bound to pursue them. He might at once, upon the dissolution of the injunction, have sued upon the bond. He may indeed, after taking out the executions, have been bound to pursue them to their direct results. But upon a default of the Sheriff he still had his election to pursue his remedy against him, which would have enured to the benefit of the surety, or to have turned to his remedy upon the bond. His release of property taken on the execution, would doubtless have operated *pro tanto*, at least, to the relief of the surety. And the surety might, by making payment on the bond, have become equitably entitled to the use of the executions in the name of the plaintiff, and perhaps to the remedy in his name, for the default of the Sheriff. In the assertion of either of these rights, he would in effect, have been the equitable assignee of the plaintiff, and on the principle of the case referred to, he could not have sued the

Sheriff in his own name, for an injury to the plaintiff in the execution.

But here he sues not for an injury to that plaintiff. He claims nothing through him, and does not sue in his right. He sues indeed, for the same act or omission which was an injury to the plaintiff in the executions, but he sues for it as a direct injury to himself; and to show that although the act or omission complained of may be the same, the injury in the two cases is different, it is enough to remark that the liability of the surety to make good the debt which is the sole ground of his right to complain, is the very cause why the default of the Sheriff, though in law an injury to the original plaintiff, may have occasioned but slight actual damage; and this consideration shows the utter inadequacy of the action in the name of the original plaintiff against the Sheriff, as a remedy for the injury sustained by the surety in the injunction bond.

Is it possible, then, that when the creditor is pursuing his remedy by executions against the real debtor alone, and that remedy will, if the Sheriff does his duty, prove entirely effectual to relieve the surety in a collateral bond, the Sheriff may by his neglect or misconduct in the management of the executions, render them utterly fruitless, and throw the whole debt upon the surety in the bond, without any direct liability to him for such an injury? In the case of *Staton* vs *Commonwealth for Gill*, (2 *Dana*, 397,) the surety in an execution, as relator, sustained an action upon the Sheriff's bond, for his failure to levy the execution on the property of the principal debtor, which he had taken on a junior execution. The case before referred to shows that if he could maintain an action on the bond as relator, he could have maintained an action on the case in his own name. And his right to maintain the action on the bond was not even questioned. In substance that case is nearly identical with this, and they differ but little in form. In some points the present case is stronger in favor of the action, and particularly in the fact, that while in each case the surety was bound to pay the debt, in that case the Sheriff might have levied in the first instance on the property of the surety, and was only under an equitable obligation to

The case of *Staton* vs *Com'wth.,* for *Gill*, stated and recognized as identical in principle with this.

Rowe
*vs*
Williams.

favor him, by making the debts out of the principal if in his power, whereas in this case the Sheriff had no power to make the debt out of the surety, but was absolutely bound, if in his power, to make it out of the principal, against whom alone he had the executions. But the material point in *Staton* vs *Gill*, is that the Sheriff having actually seized the property of the principal debtor, it was his duty to apply it to the elder execution in his hands, whereby Gill, the surety, would have been relieved, that he violated this duty in applying the property to the junior execution, whereby Gill remained liable for the other debt, and was compelled to pay it. And for this injury to Gill, arising from this misapplication of the property to the junior execution, Gill was allowed to sue. Or else the principle of the case is, that for mere neglect to levy the elder execution on the property of the principal debtor, whereby the debt was thrown entirely upon Gill, he maintained the action.

Upon the dissolution of an injunction, execution issued for the principal debt, and was placed in the hands of the Sheriff, to whom property was delivered by the defendant in the execution to sell to pay the debt, the Sheriff left the property in possession of the defendant, the property was run off out of the State, and the defendant proved insolvent, the surety in the injunction bond was sued, and paid the debt of the principal.— Held that the Sheriff in an action on the case for the misfeasance, was liable to the surety in the injunction bond, who by the misconduct of Sheriff had been rendered liable.

Without restating the present case, it is manifest that the injury in both is the same, but that the right of the present plaintiff, so far as it depends upon the right and duties of the Sheriff, is stronger and more palpable. Why then may he not sue? We do not feel the force of the answer offered, that it is because he was not a party to the execution itself. The question is, whether his legal right or interest has been injuriously affected by the acts complained of, and not merely whether he had a legal interest in the execution itself. What interest had Gill in the execution against him and his principal? He had no legal title to the execution itself, and no other equity or interest than that it should be properly used as a means of coercing the debt from his principal. This was his interest in the Sheriff's performance of his duty. His action was founded upon an injury to this interest. If the Sheriff, in consequence of this interest, owed a legal duty to him so to conduct the execution as not to injure his interest, did not the Sheriff in this case owe a like duty to the present plaintiff? As in each case the proper application of the property of the principal, according to the power and duty of the Sheriff, would have operated directly and *ipso facto* as a payment of the debt, and as a

legal discharge of the sureties, we do not know how to denominate the right of the sureties to have this application made, or their interest in its being done, or the corresponding duty of the Sheriff, unless it may be called legal. Nor can we characterise the breach of duty on the part of the Sheriff, whereby this right and interest are directly destroyed, otherwise than as an injury to a legal right by the violation of a legal duty. The case of the *Bank of Rome* vs *Mott*, (22 *Wendell*, 556,) has been referred to in support of the position, that none but the plaintiff or defendant in the execution can sue the Sheriff for the neglect of duty in the conduct of that execution. That case in effect decides that it is not sufficient for the plaintiff to show, that by the misconduct of the Sheriff in conducting an execution between other parties in which he had no interest, the defendant therein being also his debtor, has been rendered unable to pay him his debt. Or that by such misconduct the execution not being satisfied, the creditor has resorted to a mortgage on other property, and thereby withdrawn from the plaintiff a junior mortgagee a part of his security, and lost to him a part of his debt.

But in these cases the party complaining had no direct interest in the management of the execution, or the application of the debtor's property for its satisfaction. The debt to be satisfied was not his debt. The failure to satisfy it did not leave him to pay it. And its satisfaction would not have operated as a discharge of his liability. He was a stranger to the debt. His interest was in the subjection of other property to his demand. And although this interest may have been injuriously affected by the sacrifice of the same debtor's property under another execution, the injury was remote, uncertain and contingent. But in the case of *Whitaker* vs *Sumner*, (9 *Pickering*, 308,) an action was sustained by a junior attaching creditor against the Sheriff, for making a false return upon prior attachments which had been levied on the same property, by means of which false return the plaintiff derived no benefit from his attachment. There, although the plaintiff was a stranger to the process on which

The right to maintain an action against a Sheriff for misconduct in the management of an execution, is not always limited to the parties to the execution, but exists in favor of any whose legal rights are affected by the illegal act of the Sheriff.

the false return was made, his relation to the same property was such an interest as authorized him to sue. .

We cannot concede, therefore, that none but a party to the execution can sue the Sheriff in a case for his default in its management. And although in the case last cited, the action was not simply for neglect, but for a false return, yet the question is still the same, viz: whether the legal right or interest of the plaintiff has been affected, or in other words, whether the defendant has violated a legal duty which he owed to the plaintiff. We think the declaration in this case shows such a violation, not in making the false return, which so far as we perceive, did not injure the plaintiff, but if not in failing to levy on the property of the debtor, as he might and ought to have done upon the facts stated in the first count, at least in permitting the slaves to remain in possession of the debtor without a forthcoming bond, after levying on them, as alledged in the second count, which was not a mere nonfeasance, but a misfeasance. The effect of a levy upon the judgment and upon the liability of the present plaintiff, need not now be stated. The injury consequent upon a failure to levy when it might and should have been done, and especially on a failure to hold the property after a levy was made, is apparent. We think the second count of the declaration at least, is substantially good, as showing a cause of action, and the demurrer being general to the whole declaration, should have been overruled.

Wherefore, the judgment is reversed and the cause remanded, with directions to overrule the demurrer, and for further proceedings in conformity with this opinion.

*B. & A. Monroe* for appellant; *Goodloe* for appellee.