CASE 13—PETITION EQUITY—DECEMBER 20.

# Miller vs. Dyer, &c.

### APPEAL FROM TRIGG CIRCUIT COURT.

1. A sheriff levied on property of the principal debtor sufficient to satisfy the execution, and, by negligence and unreasonable delay, released the levy, became responsible to the creditor whom he paid, and took an assignment of the execution to himself, and levied it on the property of the surety. *Held*—That the latter was released from the debt, the sheriff knowing he was surety only. (7 *J. J. M.*, 90 ; 2 *Dana*, 397.)

2. The decision in 5 J. J. Marshall, 364, overruled.

A. DUVALL, for appellant, cited 5 *J. J. M.*, 364; 7 *J. J. M.*, 90 ; 2 *Dana*, 397 ; 7 *B. M.*, 202.

M. MAYES, for appellees, cited 5 *J. J. M.*, 364.

CHIEF JUSTICE BULLITT DELIVERED THE OPINION OF THE COURT:

Miller was the surety of Grace upon a note to Hopson, on which a judgment was obtained. The debt was replevied by Grace and Miller, as principals, and another person as surety. In February, 1859, an execution on the replevin bond for $1,135 17 was placed in the hands of the sheriff, Dyer, who

in April, 1859, levied it, with six other executions against Grace, for the aggregate sum of $1,516 24, on twenty horses and mules in the possession of Grace. Dyer delayed advertising the property for sale until December, 1859. In the meantime, Grace paid over $2,000 to Dyer, who paid $500 thereof to Hopson, and applied the residue to the satisfaction in full of the six other executions before mentioned, leaving the horses and mules subject only to Hopson's execution for about $650. In January, 1860, Dyer returned Hopson's execution with an indorsement stating that he had advertised the property for sale on the 28th December, 1859, but had not sold it for want of bidders, and that he had held up the execution by directions of Hopson. In March, 1860, Dyer returned a *venditioni exponas* in favor of Hopson, with an indorsement stating that he had discharged the levy on the aforesaid horses and mules, because he had learned they were not subject to the execution, and no indemnifying bond was given. Subsequently, another execution was issued in favor of Hopson, who assigned it to Dyer, having received from him the amount due thereon. Miller brought an action against Dyer and others to enjoin them from levying said execution on his property, Grace having become insolvent.

There was no proof that Hopson directed Dyer to hold up the execution which was levied on the horses and mules, or that he directed Dyer to discharge the levy. On the contrary, Hopson, whose statements are uncontradicted, testified that he had repeatedly urged Dyer to make the money out of Grace's property, and informed him that he did so at the instance of Miller, who was Grace's surety. It was proved that the horses and mules belonged to Grace and one Cunningham, in equal partnership, and that they were worth $2,000. There was no evidence that Cunningham had any lien on Grace's interest in them for the payment of partnership debts, or of any balance due to himself, nor does it appear that Cunningham gave any written notice of his claim as authorized by the act of February 12, 1856. (*Stant. Code, p.* 262.)

Upon the facts in the record, it is clear that Grace's interest in the horses and mules was subject to Hopson's execution,

and worth more than enough to satisfy it, and that Dyer should have sold the property without an indemnifying bond, and that he violated his duty in discharging the levy thereon. The court below, however, dismissed Miller's petition, to reverse which judgment he appeals.

It is conceded that if Hopson had authorized the discharge of the levy on the horses and mules, Miller would have been discharged from liability as surety. But it is contended, upon the authority of the case of *Finn vs. Stratton, &c.* (5 *J. J. M.*, 364), that, as Dyer had a right to levy on Miller's property in the first instance, Miller has no right to complain of him for neglecting to subject the property of Grace; that Dyer was responsible to Hopson only for that breach of duty; and that, as Miller continued liable to Hopson, he is now liable to Dyer, because the assignment passed to Dyer all of Hopson's rights. These positions are sustained by the case of *Finn vs. Stratton*. But that case, so far at least as it applies to the one under consideration, has been, in effect, overruled by subsequent decisions. Thus, where a sheriff received at different times two executions against a debtor, and subjected his property to the satisfaction of the junior execution, thus throwing the senior execution upon the property of a surety, it was held, in two cases, that the surety, by suing, as relator, upon the sheriff's bond, might recover at least the amount of money which he was thus compelled to pay. (*The Commonwealth vs. Stratton, &c.*, 7 *J. J. M.*, 90; *Stan. et al. vs. The Commonwealth*, 2 *Dana*, 397.) And where a sheriff, after levying on a debtor's property sufficient to satisfy an execution, left it in possession of the debtor, and he removed it from the State, it was held that a surety of the debtor, in an injunction bond, who was compelled to pay the debt, might recover the money from the sheriff by an action on the case. (*Rowe vs. Williams*, 7 *B. M.*, 202.)

Notice to the sheriff of the suretyship does not seem to have been regarded as material in either of the above cited cases, the court, in *Finn vs. Stratton, &c.*, appearing to have been of the opinion that the sheriff was not liable to the surety, though he may have had such notice; whilst in the other cases he was held to be liable, though it did not appear that he had such

notice. Upon that question, however, we need not express an opinion, as in this case the sheriff had such notice before he discharged the levy upon Grace's property.

Upon the authorities cited, it is clear that Miller, if he had been compelled to pay the debt to Hopson, could have recovered it from Dyer; and, consequently, that Hopson's assignment did not transfer to Dyer a right to recover the money from Miller. And, as Miller, in proper time, caused Dyer to be notified of his position as surety, we perceive no reason for denying to him the equitable relief which he seeks.

The judgment is reversed, and the cause remanded, for further proceedings not inconsistent with this opinion.