#### HILL v. SEWELL.

Sheriffs—*Liability in levying executions, etc.*—Where an execution, against principal and security, comes to the hands of the sheriff, and through neglect, want of diligence, favor or extension of time, by the sheriff, he fails to make the money out of the principal, or the principal become insolvent, the sheriff becomes responsible to the security for the amount he may be forced to pay.

Security—*When protected in equity.*—When a sheriff, without the consent of the security, through favor or extension of time to a principal, pays off an execution, in his hands, against principal and security, and procures an assignment of the execution to himself, equity will enjoin him from proceeding against the security for the amount so paid.

#### APPEAL FROM UNION CIRCUIT COURT.

Hon. G. W. McCown, *Circuit Judge.*

*Watkins & Rose,* for Appellant.

In this case we take it that if the law would subrogate the negligent sheriff to the rights of the creditor, whose judgments he had paid, an assignment would be useless; and that an assignment could not impose any additional burden on the surety, which was not inherent in the nature of the situation. Otherwise his liability in the end might be made to depend on the terms of a contract between other parties, of the existence of which at the time he had no knowledge. But sureties cannot be concluded by any fabricated account between third persons. *United States vs. Boyd,* 5 *How., U. S.* 29.

"Subrogation is not to be allowed, except in a clear case, and when it works no injustice to others." *Lloyd vs. Galbraith,* 32 *Penn.,* 103. Even if a stranger had the judgments without being delinquent in respect thereof. *Dunn vs. Nichols,* 25 *Ark.,* 129; *see also Rusk vs. Ramsey,* 3 *Munf.,* 417; *Hammond vs. Chamberlin,* 26 *Vt.,* 406; *Miller vs Dyer,* 1 *Duval (Ky.)* 263. The case of *Finn vs. Stratton,* relied upon by appellee, has been overruled, and is not law. *See Com. vs. Stratton,* 7 *J. J. M.,* 90; *Stan. Com.* 2 *Dana* 397, *and Rawe vs. Williams,* 7 *B. M.*

*John H. Carlton* and *Garland & Nash,* for Appellee.

Mere indulgence does not release the security. *King & Houston vs. Bank, etc.,* 9 *Ark.,* 189, 190; 13 *Miss. Rep.,* 125; 5 *Cal.* 173; 3 *Cowan,* 446. Not even when the principal, in the meantime, becomes insolvent; 14 *Miss.,* 473. Nor when the principal dies, and the creditor neglects to prove his claims against the estate of the principal, until it is barred by the statute of non-claim. *Ashley, et al., vs. Johnston, et al.,* 23 *Ark.* 165; citing *Johnston vs. Planter's Bank,* 4 *Smede & Marshall,* 171; *Cohen, et al., vs. Com. of S. F. 7; Ibid* 441: *Marshall vs. Hudson,* 9 *Yerg.* 63; *McBroom vs. Governor,* 8 *Porter,* 33; *Wisinger vs. Cawthorn,* 6 *Ala.,* 716.

But by *sections 1 and 2, chapter* 157, *Gould's Digest,* 1015, appellant might have given Grinnet notice in writing to proceed against the principal, Witherington, and if the plaintiff had delayed even thirty days, appellant would have been discharged. *State Bank vs. Watkins,* 6 *Ark.,* 123; *Ib.* 317; *Caldwell vs. Mc Vickers,* 9 *Ark.,* 418; *Cummins & Fenno vs. Garretson,* 15 *Ark.,* 132; 14 *Ark.,* 216. But he slept on his rights *then,* and *can't* be heard *now.*

"The right of the officer to occupy, by substitution, the place of the plaintiff in an execution, to whom he has paid the amount, is founded on principles of unquestionable justice." *Finn vs. Stratton,* 5 *J. J., Marshall* 366; *Bray vs. Howard,* 7 *B. Monroe* 467; 5 *Mon.,* 128 *Ky.*

Gregg, J.—On the 27th day of March, 1861, the appellant presented his bill, to the Judge of the Sixth Judicial Circuit, for an injunction. He alleged, therein, that on the 2d day of April, 1859, one Grinnett, as guardian, etc., recovered two judgments against A. L. Worthington, each for $1301 61, and on the 29th day of the next July, he caused executions to issue, which, on the 27th day of September following, were respectively duly levied, and the appellant then became security on Witherington's delivery bonds; that the property thus released was not delivered, and the bonds were returned

forfeited. That on the 1st of November, 1859, executions were issued on these forfeited bonds, and on the 7th of the same month, delivered to the appellee, who was then sheriff of Union county, to be by him levied and collected. That he gave no notice to the appellant, and on the return day of these executions, endorsed them wholly unsatisfied, and returned them without the knowledge or consent of the appellant. That during the time the sheriff so held these executions, Worthington had ample property, visible and subject to execution in the county, out of which the sheriff could have levied and collected said amounts, but that he, without the knowledge of the appellant, took the promise of Worthington that he would pay the money on or before the return day, which he failed to do, and after the return of the executions, to avoid a rule being made against him, because of the failure to levy and collect, the appellee paid them off.

That in 1860 or 1861, Worthington became much embarrassed, and with the knowledge and consent of the appellee, left the State, and that afterwards, when there was no hope of making the money out of Worthington, the appellee, for his own benefit, and to reimburse himself for the moneys he had so paid out, on the 20th day of March, 1861, caused other executions to be issued, on said forfeited delivery bonds, and directed the then sheriff of said county to make said amounts out of the property of the appellant, and that said sheriff was proceeding to collect the same, and he prayed an injunction; a temporary injunction was issued. The cause then slept over the war; after which, depositions were taken, and in April, 1870, it came on for final hearing, and the court found that there was no equity in the bill, and decreed that it be dismissed for want of equity, and that the appellant pay all costs, from which decree he appealed to this court.

The case of *Finn vs. Stratton*, 5 *J. J. Marshall*, 366, referred to by the appellee, is exactly in point in his favor. Judge Buchanan, in that case, held very strongly in favor of the sheriff, and that, wherein his misconduct had prejudiced a

2

security; but the Supreme Court of his State refused to follow that ruling. In the case of *Staton vs. The Commonwealth*, etc., 2 *Dana*, 377, they held a sheriff liable to a security who had been forced to pay, because the sheriff had levied a junior instead of a senior execution; and in the case of *Rowe vs. Williams*, 7 *B. Monroe*, 206, wherein the sheriff held an execution against a principal and his security, in an injunction bond, and having levied upon the property of the principal debtor, through his neglect, the property was run off and the levy lost, upon the security being compelled to pay off the debt, that court held that the sheriff was liable to the security, in an action, for the amount he had been compelled so to pay; and in a later case of *Miller vs. Dyer*, etc., 1 *Duval*, 263, the case of *Finn vs. Stratton* is expressly overruled; in this last case, by the neglect of the sheriff, he became liable and paid off the judgment and procured an assignment of the execution to himself, and attempted to make the money out of the security, who applied for an injunction, and the court said he was entitled to that relief, in equity, because, if forced to pay, he could then sue the sheriff and recover back from him; and these established rulings, of the Kentucky courts, fully sustain the appellant. See also, 7 *J. J. Marshall*, 90; *Staton et al., vs. Commonwealth*, 2 *Dana*, 397; 2 *Johns*, 445 ; 3 *Munf.*, 417. In this case, the appellee did not deny but that Witherington had ample property, subject to execution, during all the time the writs were in his hands, against him and the appellant, and if he had, that fact was abundantly proven. Nor is it pretended but that the appellee could have collected the money from the principal debtor, if he had made an effort so to do. At his own risk, he chose to favor the debtor, and declined to make the levy upon his promise that he would pay.

It is a principle well understood that, where a burden must fall between parties alike indifferent as to the beneficial considerations, it should be borne by him who had been most in fault; he, whose action has most contributed to an inequitable

result, should bear that responsibility.  In this case, there is another and strong reason why the law should be as it is; the appellee was a public officer, sworn to a faithful performance of his duties.  The well being and peace of society depends much upon the prompt and efficient enforcement of all the laws; without that, the rights of none are secure, and when such an officer departs from the line of his duty, as marked out by the law, he is held to a rigid account, and if loss must fall between him and one not at fault, the law readily throws the damages upon him.

This was not a mere neglect of duty on the part of a public officer, but was, as shown clearly by the evidence, a willful and intentional assumption of responsibility to extend time to the principal debtor, by reason of which he became insolvent before the debts could be collected, and this well illustrates the propriety of the rule that throws the responsibility upon him; his own wrong and neglect should not burden another less at fault than himself, and the appellant was no more bound by the bond he had given to release the property, in this case, than was the appellee by the bond he had given to execute the duties of his office in all cases.

The decree of the court below is reversed, and this cause is remanded to the court with directions to grant a perpetual injunction and adjudge costs against the appellee.